**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MAHMOOD HUSAM ALTABRA,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 1:22-CV-01247** |
| | § | |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN,** | § | |
| et al. | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Mahmood Husam Altabra (hereinafter "Plaintiff" or "Mr. Altabra") files this Third Amended Complaint of and about Defendant, University of Texas in Austin (hereinafter "Defendant" or "UT", and for causes of action against them, would show the Court as follows.

### I.    NATURE OF CLAIMS

1.    This action is filed under Title VII of the Civil Rights of Act of 1964 to seek relief and correct unlawful employment practices by Defendant including race discrimination, national original discrimination, retaliation, and unlawful termination of employment.

This complaint seeks to recover actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has

1

suffered, continues to suffer, and will suffer in the future. Lastly, Plaintiff seeks to recover attorney's fees, pre-judgment and post-judgment interest, and costs of court.

## II.    PARTIES AND SERVICE

2.      Plaintiff, Altabra, is a citizen of the United States and of the State of Texas, and resides in Travis County, Texas. Plaintiff is a former employee of Defendant.

3.      Defendant, University of Texas at Austin is a state university located within the Western District of Texas. Defendant may be served through its President, Mr. Jay Hartzell.

## III.    JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 as this case presents Federal questions, and claims arise out of question of Federal Constitutional law under the 14th Amendment as well as 42 U.S.C. 2000e et seq. and 20 U.S.C. 1661 et seq.

5.      This Court has personal jurisdiction over all parties in this lawsuit because each party listed in the lawsuit resides in Texas.

6.      Moreover, venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1)-(2). Defendants are residents of the State in which this district is located and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## IV.    CONDITIONS PRECEDENT

7.      All conditions precedent to filing this lawsuit have been performed or have occurred. Employee exhausted his available administrative remedies by filing his EEOC charge on April 6, 2021, and a second EEOC Charge No. 451-2021-03083 on December 23, 2021. Plaintiff received his right to sue from the EEOC for both charges on September 20, 2022. See Exhibit A Exhibit B. Plaintiff filed his initial Complaint within 90 days of receiving the notice of

right to sue from the EEOC on September 20, 2022. The claims pursued in this lawsuit are included or related to Plaintiff's claims in his EEOC charge.

## V.    FACTS

8.    Plaintiff, Altabra, who is of Arabic national origin, began working for Defendant on October 28, 2019, for the position of Instrumentation and Control Technician I. Plaintiff received high scores in his evaluation in his first year of employment. During the duration of Plaintiff's entire employment, Plaintiff worked in Zone three and reported to Mr. Richard Eaves (hereinafter "Mr. Eaves"), as his Zone three supervisor.

9.    Plaintiff's coworker, Ms. Dabbi Manning (hereinafter "Ms. Manning"), began to subject Plaintiff to a hostile work environment. On or about May 2020, Ms. Manning made a demeaning joke to Plaintiff about his language comprehension, and ridiculed Plaintiff about the manner he wrote his work orders.

10.    On July 3, 2020, Plaintiff reported this incident of national origin discrimination to his supervisor, Mr. Eaves, but no action was taken to address the harassment and discrimination by Plaintiff's coworkers.

11.    On or about July 3, 2020, Plaintiff's coworker, Mr. Randal Kobza (hereinafter "Mr. Kobza") also made discriminatory comments about Plaintiff's language comprehension. Mr. Kobza also worked in the same zone as Plaintiff and reported to Mr. Richard Eaves as his supervisor. Mr. Kobza came up to Plaintiff and stated, "Do you know why you are the only person laughing here? It's because you have language barriers."

12.    Plaintiff reported the incident and language discrimination by Mr. Kobza to his supervisor, Mr. Richard Eaves by email on July 3, 2020.

13.     Plaintiff was also treated differently than his non-Arabic coworkers by his supervisor, Mr. Eaves. The following non-Arabic coworkers, Mr. E.J. Torres, Mr. Jason Floyd, and Mr. Adam Serna were hired after Plaintiff, worked in zone three with Plaintiff, and all three reported to Mr. Eaves as their supervisor. However, unlike Plaintiff, Mr. Torres, Mr. Floyd, and Mr. Serna, received their assigned car within two months of starting their employment. However, Plaintiff's supervisor, Mr. Eaves, did not assign a company vehicle to Plaintiff, despite Plaintiff working in five different buildings off campus that he had to visit weekly. This discriminatory behavior towards Plaintiff, affected his ability to do his job, as Plaintiff was reduced to borrowing cars from his coworkers and dependent on their availability.

14.     The hostile environment Plaintiff was subjected was escalated further by the actions of Mr. Michael Rodriguez. Each time Plaintiff went to work in the stadium, Mr. Rodriguez harassed and bullied Plaintiff, making demeaning and unwarranted comments about Plaintiff's ability to do his work each time he worked in the Stadium building. One example of the harassment occurred on or about September 2, 2020, when the Director of Maintenance at the Stadium building, Mr. Michael Rodriguez (hereinafter Mr. Rodriguez"), told Plaintiff that "we don't need you here, you will not get paid for the work hours you spend here." Mr. Rodriguez did not treat Plaintiff's white/non-Arabic coworkers in this manner or prohibit them from fulfilling work orders in the Stadium.

15.     On or around September 2020, Plaintiff made a complaint to Human Resources about Mr. Rodriguez's discrimination and refusal to work with Plaintiff.

16.      Following Plaintiff's complaint his supervisor attempted to remove Plaintiff from his department of zone three on September 2, 2020, and transfer Plaintiff to zone one department. However, on September 4, 2020, Plaintiff was informed by Mr. Toni Lee and Mr. Enrique

Lastname Unknown, two employees who worked in the zone one department, that zone one had a supervisor with a pattern of discriminating against employees based on national origin and race. Plaintiff had no desire to move to an even more hostile work environment than his current one, and therefore declined the transfer to Zone One and elected to remain in his position.

17.    Additionally, Plaintiff complained to Human Resources of Mr. Eaves' discrimination and retaliation towards Plaintiff by attempting to transfer Plaintiff to a department that was known for having a supervisor that was racist, rather than address the perpetrator currently harassing Plaintiff. Following this complaint, Plaintiff's supervisor, Mr. Richard Eaves retaliated against Plaintiff and prohibited him from working at the Stadium building. By prohibiting Plaintiff from working in the Stadium building, Mr. Eaves limited Plaintiff's ability to get work experience in an entire department's technical needs, which reduced Plaintiff's opportunities for future promotions.

18.    The discrimination and harassment against Plaintiff escalated further on or about September 7, 2020, when Mr. Kobza called Plaintiff, "a fucking Arab." Plaintiff made a complaint about the incident to the investigation department on March 19, 2021.

19.    Despite Plaintiff's complaints, Mr. Kobza's harassment towards Plaintiff continued. On or about October 2020, Plaintiff was with his coworker, Mr. Armando Ortiz, working in the mechanical room at Belmont Building when Mr. Kobza entered the room eating pistachios. Mr. Kobza proceeded to throw pistachio shells at Plaintiff, to which Plaintiff told Mr. Kobza, "I am not your trashcan."

20.    Throughout the following months, Plaintiff continued to be subjected to incidents of harassment and islamophobia on a daily basis by his supervisor, the employees in his department and other personnel at the university.

21.     Hoping that moving to a different department would allow Plaintiff to escape the hostile working environment he was being subjected to, Plaintiff decided to apply to the position of Supervisor of the Building Optimization Team at the University of Texas on December 9, 2020. This role was in a different zone than Plaintiff's current department at the University of Texas, but had the same qualifications and job responsibilities of Plaintiff's current position of Control Technician I. The position of Supervisor of Building Optimization Team required four years' experience in business optimization system (BAS), and experience in instrumentation and control. Plaintiff's two previous positions had specialized in operating business optimization systems (BAS) as well as chiller water systems, AUHs, VAVs, fan coils, and troubleshooting VFD's drives, giving Plaintiff more than four years' experience in business optimization system (BAS), and experience in instrumentation and control. Furthermore, Plaintiff's position as a Control Technician I at UT focused primarily on monitoring and working on the business optimization system (BAS) and how it was operated and monitored at the university, giving Plaintiff the required and specialized experience needed for the applied role.  Additionally, the position had no degree requirements. However, Plaintiff had a bachelor's degree, a contracting license with TDLR, an ABB certification from ABB Company Variable frequency drive, a diploma certificate from Austin Career Institute in HVAC, and an EPA Certification Universal for HVAC maintenance, making Plaintiff more than qualified for the role, but the position was given to a white/non-Arabic coworker that had less qualifications and experience than Plaintiff. [1]

22.     Plaintiff therefore continued working in his then current position. However, in 2021, the hostile work environment against him became even more egregious. On February 26,

---

[1] Exhibit A – Plaintiff's Bachelor's Degree, contracting license with TDLR, ABB certification from ABB Company Variable frequency drive, diploma certificate from Austin Career Institute in HVAC, and an EPA Certification Universal for HVAC maintenance.

2021, Mr. Kobza told Plaintiff "I looked you up on google and found out that you are a terrorist, and you blew up a childcare building back there [referring to Iraq]." Mr. Kobza made this statement in front of two coworkers of Plaintiff. One of the coworkers was Mr. Michael Brown (hereinafter "Mr. Brown").

23.    That same day, on February 26, 2021, Plaintiff emailed Human Resources and his supervisor, Mr. Eaves about Mr. Kobza stating he had bombed childcare buildings in Iraq and called Plaintiff a terrorist. [2]

24.    On March 1, 2021, Mr. Brown also made a complaint to Mr. Eaves about the hostile work environment Plaintiff was being subjected to because of his national origin, including Mr. Kobza's hate speech towards Plaintiff on February 26, 2021. Additionally in the complaint, Mr. Brown stated that Mr. Kobza and other personnel at the university were fostering an environment of hate, islamophobia, xenophobia and racism against Plaintiff. Lastly Mr. Brown stated, "It is important that you and the command chain know THIS IS NOT AN ISOLATED INCIDENT. It is brushed off, laughed off, nearly EVERY DAY."

25.    On March 8, 2021, Plaintiff complained to Human Resources about his supervisor's discrimination against him compared to his other coworkers in zone three.

26.    Despite Plaintiff's complaints about Mr. Kobza and Mr. Eaves, neither individual was disciplined, demoted, or terminated from their position.

27.    Then on March 26, 2021, Mr. Eaves retaliated further against Plaintiff and failed to approve Plaintiff's time sheet hours. Prior to Plaintiff making his complaints of discrimination against Mr. Eaves, Mr. Eaves would approve the work hours Plaintiff submitted without further discussion needed. However following Plaintiff's complaint, Mr. Eaves refused to approve work

---

[2] EX. B - Doc 1-1, pg. 14, email from Plaintiff on February 26, 2021.

orders for Plaintiff, and additionally would not inform Plaintiff when his hours were not being approved. Mr. Eaves approved the work hours of Plaintiff's non-Arabic coworkers without requiring further verification from Mr. Eaves.

28.    When Plaintiff raised this issue, Mr. Eaves dismissed Plaintiff's concerns and told Plaintiff that he needed to contact payroll to approve the hours and not him. However, Plaintiff learned this was not true. When Plaintiff contacted payroll, Mr. Percy E. Bedford, HR Representative, informed Plaintiff that the reason the hours had not been paid, had been due to Plaintiff's submitted work hours not being approved. After being informed about this contradicting information demonstrating Plaintiff's supervisor had lied to him about who had the authority to approve hours, Plaintiff made a written complaint about Mr. Eaves's actions on March 26, 2021, to Ms. Mona B. Maali.

29.    In the Spring of 2021, a Project Manager for the University of Texas, that worked in a different department than Plaintiff approached Plaintiff multiple times to ask how to change air handles, what equipment was needed for the building, issues related to the pneumatic system conversion to a digital control system, and other technical matters. After months of Plaintiff providing competent assistance to this Project Manager, the Project Manager finally asked Plaintiff to apply to a mechanical project manager position in his department. The Project Manager stated the position has no degree requirements and that they needed someone with Plaintiff's experience. After the conversation ended, the Project Manager then sent Plaintiff the link to the application on or about April 4, 2021. Following the project manager's instructions, on April 5, 2021, Plaintiff applied to the position of Mechanical Project Manager. The position required experience in supervising the construction of mechanical aspects like HVAC, and matters related to instrumentation and control. As stated above, Plaintiff had the relevant technical experience and

was certified in all necessary HVAC matters, making him more than qualified for the position. However, Plaintiff was not interviewed for the position, and ultimately was not given the position. Instead, the Project Manager position was given to a non-Arabic coworker with less qualifications and experience than Plaintiff.

30.     Plaintiff filed an EEOC Charge of Discrimination against his employer on April 6, 2021, regarding the discrimination and retaliation he had faced due to his race and national origin.

31.     On April 9, 2021, Mr. Kobza harassed Plaintiff again in the employee parking lot, where he came close to hitting Plaintiff's car, forcing Plaintiff to break to avoid the collision. Plaintiff once again reported this incident to his supervisor, Mr. Eaves, Ms. Mona B. Maali in Human Resources, and Mr. Kobza that same day.

32.     On May 25, 2021, Plaintiff was subjected to further harassment from the other employees in his department. On this date, Mr. Kobza was responsible for cleaning the shop, and when Plaintiff arrived to work that morning, he saw that trash in the shop had been dumped underneath his chair and on his desk. Plaintiff called his supervisor, Mr. Eaves to report this incident. Plaintiff also made a complaint to Human Resources on or about May 25, 2021, but again no action was taken against Mr. Kobza by management.

33.     Following Plaintiff's EEOC complaint and subsequent complaints to Human Resources, Plaintiff received further retaliation from his supervisor, Mr. Eaves. After Plaintiff's complaint against Mr. Eaves, Mr. Eaves started requiring Plaintiff to only complete his paperwork in the same building that the work had taken place. This rule was not required of Plaintiff's coworkers in Zone three that reported to Mr. Eaves. Additionally, Mr. Eaves began interrogating Plaintiff about the specific order Plaintiff chose to complete his work orders. Mr. Eaves did not harass Plaintiff about this matter prior to Plaintiff making his EEOC Charge and complaints of

9

discrimination and retaliation against Mr. Eaves. Then on June 4, 2021, Mr. Eaves began requiring Plaintiff to request a work order before Plaintiff was allowed to start work on anything. This was not a policy in place in Zone three prior to Plaintiff's EEOC charge. Mr. Eaves did not require Plaintiff's white/non-Arab coworkers to complete work orders prior to starting their work.[3]

34.     These acts of harassment and targeted scrutiny created further obstacles for Plaintiff to perform his work in a timely manner. Therefore, on June 4, 2021, following Mr. Eaves placing another arbitrary rule on Plaintiff that his other coworkers were not subjected to by Mr. Eaves, Plaintiff submitted an additional complaint about Mr. Eaves's most recent actions of retaliation against Plaintiff to Human Resources.

35.     On July 13, 2021, Plaintiff received a letter from Ms. Jenn Corey Meehan, the Institutional Equity Investigator at the Office of Inclusion and Equity. In the letter it stated that a meeting was had with Mr. Kobza to discuss "the concerns raised in detail" and that the OIE was recommending that Mr. Konza attend a multi-disciplinary training on diversity, equity and inclusion. The letter did not include any mention of disciplinary action taken against Mr. Kobza such as a demotion, restriction from merit bonus increases, or restriction from transferring to any other position at the University of Texas.[4]

36.     Then on June 15, 2021, Plaintiff was informed that Defendant had closed his complaint against Mr. Eaves.

37.     In July 2021, Plaintiff applied to the Instrumentation and Control Technician II position within his department of zone one. The role of Instrumentation and Control Technician II had the following responsibilities and worked with: VFD, existing HVAC, heating and cooling systems, developing and performing functional testing and calibration of building automation

---

[3] Exhibit B - Doc 1-1, pg. 28- 29.
[4] Exhibit B - Doc 1-1, pg. 28- 29.

equipment, repairing or replacing mechanical, electrical and instrumentation systems as required, and worked with other UT maintenance and energy groups to troubleshoot and resolve complex HVAC related building issues.  The role required five years' experience with installation, repair, maintenance and operation pneumatic and instrumentation and control systems, and high school degree or GED. Plaintiff had over five years' experience with pneumatic and instrumentation and control systems. Additionally, Plaintiff had all the relevant HVAC certifications discussed above, making him more than qualified for the position. However, Plaintiff's supervisor, Mr. Eaves gave the role to Mr. Armando Ortiz, a less qualified Hispanic coworker of Plaintiff in zone three that also had previously reported to Mr. Eaves as his supervisor.

38.    Plaintiff was more qualified for the position of Instrumentation and Control Technician II position than Mr. Armando Ortiz for the following reasons. Plaintiff had the qualifications for this position as he had an ABB certificate for Low Voltage Drive (VFD), which was considered the main responsibility of the Tech II position. Mr. Armando Ortiz did not have an ABB certificate for VFD, nor did he have the skills to work with VFD. Secondly, Plaintiff also had an HVAC certification with the Texas Department of License and Regulation. Mr. Armando did not have an HVAC certification like Plaintiff.

39.    Lastly, Plaintiff had more technical skills than Mr. Armando Ortiz as exhibited by their respective performances when they were both in the position of Instrumentation and Controls Technician I. An example demonstrating Plaintiff's superior work performance compared to Mr. Armondo Ortiz occurred on March 16, 2021. Weeks prior a humidifier device in the Stark building had needed maintenance and Mr. Eaves had assigned the work order to Mr. Armando Ortiz. For weeks Mr. Armando Ortize attempted to fix the issue, but despite ordering control board and chamber sensor for the issue, he ultimately gave up and returned the work order to Mr. Eaves. At

this point Mr. Eaves assigned the work order to Plaintiff. Plaintiff then proceeded to diagnose and identify the problem that same day, discovering that there was a crack in the water tank coil, causing the humidifier to lock out on safety sequence operation.[5] This demonstrated that the initial diagnosing and parts ordered by Mr. Armando Ortiz had been wrong. This is only one example of multiple incidents where Plaintiff exhibited more competent performance in his Instrumentation and Controls Technician I role compared to Mr. Armando Ortiz.

40.     On July 21, 2021, Plaintiff made a written complaint to Ms. Mona B. Maali and Ms. Deborah Sharp at the Inclusion Office stating that Plaintiff had been discriminated and retaliated against by Defendant and his supervisor, Mr. Eaves due to Plaintiff's multiple complaints against Mr. Eaves and the other UT employees for discrimination, harassment, and retaliation. Furthermore, Plaintiff stated that because of his complaints, Plaintiff was now experiencing discrimination in the hiring process, exhibited by the most recent rejection of his application to the position Instrumentation and Controls Technician II. However, no action was taken by management to address Plaintiff's complaint of discrimination and retaliation in the hiring process.

41.     Then on July 28, 2021, Mr. Kobza once again harassed and threatened Plaintiff physically as he was exiting the bathroom.

42.     On July 28, 2021, Plaintiff submitted an additional complaint to Mona B. Maali, President Jay Hartzell, and Ms. Deborah Sharp about Mr. Kobza's continuing harassment towards him after the investigation was closed against Mr. Kobza. Furthermore, in the email Plaintiff complained about the lack of action taken to protect Plaintiff from Mr. Kobza's continuing harassment and offensive insults to Plaintiff about being a terrorist. Additionally, Plaintiff complained there was discrimination by the Human Resource department regarding the handling

---

[5] Exhibit C - Exhibit 80

of complaints, which allowed Muslims like Plaintiff to be called terrorist without any repercussions to the perpetrators.

43.    On or about the first two weeks of August 2021, Plaintiff became ill and notified Mr. Eaves that he would be out of work because of his illness. Mr. Eaves instructed Plaintiff to stay home as needed. However, after a few days Plaintiff's symptoms became more severe and caused him and his family concern as this was during the height of the Covid-19 pandemic. Therefore, Plaintiff called the medical department at the University of Texas to make an appointment for a rapid test in order to know if his illness was in fact Covid-19. The associate on the phone told Plaintiff to come over for them to do the test. Mr. Altabra went that day and took the test, expecting to have the results that same day or the following at the latest, as he had requested a rapid test rather than the normal test that took five days for the results. The next day on August 18, 2021, Plaintiff still had not received the results and decided to call the medical department at UT to inquire about what had happened with his test results.  In Plaintiff's state of sickness, the delay was concerning as he needed to know if he needed to go to the hospital. Therefore, he asked repeatedly for the results of the test, stating that this was a matter that UT needs to take responsibility for as Plaintiff had become sick while working at his employment. Furthermore, the medical team had told Plaintiff the day before, they would be administering the rapid test as requested, but failed to do so presumably from the delay of the results.  Plaintiff was then transferred to a nurse in Occupational Health department at UT, which he hoped would be better equipped to answer his questions. However, the nurse also did not have access to Plaintiff's test results. This coupled with Plaintiff's state of illness caused him to become understandably agitated with the associate on the phone. However, at no point during either call did Plaintiff use

obscene language or threatening language with either UT representative, nor did Plaintiff use the word "fuck' during the calls.

44.    On or about August 21, 2021, Mr. Altabra returned to work as usual. Then several days after Mr. Altabra received a brief call from an Employee Relations Specialist. The Specialist asked him what had happened with Plaintiff and the UT medical department. Plaintiff responded that nothing had happened, other than him calling to ask about his test results. The specialist then asked again what Plaintiff meant by "nothing happening." Plaintiff responded by stating that he had asked about the results of his test, and that the medical team had made a mistake and not provided Plaintiff with the incorrect one. The Specialist did not ask Plaintiff about any obscene language or profanity used by him or any other alleged inappropriate conduct by Plaintiff. The call ended shortly after, and Plaintiff was not contacted by any other UT personnel regarding the issue.

45.    On or about September 1, 2021, Plaintiff sent an email to the university employees, the president, Human Resources, inclusion office, and the investigation department about the discrimination at the university that Plaintiff was facing for being Arabic and Muslim.

46.    On September 3, 2021, Plaintiff met with Ms. Deborah Sharp from the Office of Inclusions and Equity Office, about his complaints and to discuss whether the investigations by Defendant regarding the complaints were still pending. During the meeting Ms. Sharp said that she could not pursue any investigation into Plaintiff's complaint against Michael Rodrigues, as it was related to cases that still were in process with the Department of Investigation and Adjudication (DIA). Ms. Sharp also stated the Michael Rodrigues complaint was transferred to the Department of Investigation and Adjudication (DIA) and the had DIA closed it. Lastly, Ms. Sharp stated that Plaintiff needed to contact the DIA for more information.

47.    Therefore following Ms. Sharp's instructions, Plaintiff reached out to the DIA office.  However, the DIA office then directly contradicted what Ms. Sharp had stated to Plaintiff and denied having any information about the complaint. This was communicated in an email on September 7, 2021, from Ms. Calysta Lantiegne at the DIA stating, "Thank you for your inquiry. Regarding your complaint against Michael Rodriguez, DIA did not handle that complaint. You filed it with the Office of Inclusion and Equity, which closed it on October 22, 2020. As for your most recent complaints against Richard Eaves and Randall Kobza, they are still open."

48.    After receiving these contradictory answers, Plaintiff emailed a complaint to the University of Texas President, Mr. Jay Hartzell on September 7, 2021, regarding the neglect of his complaints by the Defendant's DIA office and the conflicting information provided by Ms. Sharp. Additionally in the email, Plaintiff requested to be provided information about the alleged investigation carried out by Defendant in response to his complaints.

49.    Another employee at UT that contributed to the creation of a hostile working environment against Plaintiff was Mr. Bradly Rogers. Mr. Rogers was responsible for scheduling the cleaning assignments in Zone three, and would place Plaintiff in the more demeaning tasks, and not place himself on the schedule at all. Mr. Rogers's discrimination against Plaintiff escalated on Wednesday September 8, 2021. On this date, Plaintiff stayed until around 4 p.m. working at the Administration Building (ATU).  However, prior to leaving, Plaintiff spoke to Mr. Bradly Rogers and asked him to create the required work order for the assignment Plaintiff had been doing that day. Mr. Bradly Rogers informed Plaintiff he would not be completing the work order for him. After hearing Mr. Rogers's response, Plaintiff did not argue and simply informed him that he would discuss the matter with Mr. Eaves the following day.

50.     The next day on September 9, 2021, Plaintiff went to Mr. Eaves' office and asked him to complete the work order for the previous day. Mr. Eaves stated "We are going to do a work order on this. There's no problem." To avoid any unforeseen delays, Plaintiff informed Mr. Eaves that Mr. Rogers had told Plaintiff he would not be creating the work order for him. At this point, Mr. Rogers who was not part of the meeting, and was outside Mr. Eaves office, standing over 20 feet away, began yelling to Plaintiff, "What did you say?!" and arguing about the work order in a threatening manner. Plaintiff simply repeated what Mr. Rogers had told him the day before about not making a work order the building. At this point, Mr. Eaves said, "let's go back into the office and talk." Once again Mr. Altabra repeated to Mr. Eaves the conversation of the previous day with Mr. Bradley Rogers. After Plaintiff left the Mr. Eaves office, Plaintiff informed Mr. Rogers that he needed to put himself on the cleaning schedule as well. At no point did Plaintiff call Mr. Rogers a liar, nor verbally attack Mr. Bradly Rogers.

51.     At the end of the day on September 9, 2021, Mr. Eaves called Plaintiff to his office for a zoom meeting with Mr. Zachary (last name?), the Director and a Human Resource Associate. The meeting was brief and Mr. Eaves simply stated, "We are here today regarding this letter. You do not have to read it right now, but you must make a decision by 4 p.m. tomorrow." Having no warning about the contents of the letter[6], Plaintiff did as instructed, taking the letter and left.

52.     The September 9, 2021 disciplinary letter titled "Decision Making Day"[7] contained false allegations against Plaintiff, and even more concerning required Plaintiff to accept the following demotions in his position: 1) becoming ineligible for a merit increase for twelve months, and 2) becoming ineligible for a transfer for a period of 12 months.  Less than 24 hours was not sufficient time for Plaintiff to address the multiple false statements or decide to accept the

---

[6] Exhibit D - Doc 1-2, pg. 1-2.
[7] Exhibit D - Doc 1-2, pg. 1-2.

demotion in his position for unwarranted reasons. Therefore, the following morning on September 10, 2021, Plaintiff emailed Mr. Eaves a response, stating that he required additional time to dispute the false information in the letter before he made his decision.

53.    Plaintiff responded to this disciplinary letter on September 13, 2021, with the following information. Plaintiff sent a letter to Human Resources addressing his multiple concerns regarding the Decision Day Letter's false accusations against Plaintiff, the discrimination and higher scrutiny Plaintiff was being subjected to by Mr. Eaves and Defendant, and the retaliation of a demotion, Plaintiff was being asked to accept in order to keep his job.

54.    Then on September 17, 2021, Mr. Eaves sent Plaintiff a termination letter where he stated that his expectations from Plaintiff in order to allow Plaintiff to remain working was the following: "I expect that at all times you will demonstrate professional language and conduct. I expect you to avoid using obscene, harassing, or hostile language towards others. If you have an issue, I expect you to politely and respectfully ask for assistance or clarification, I expect that in the future you will use resources appropriately, and I expect that you will follow all direct orders from your supervisor going forward."

55.    However this letter mischaracterized the requirements Plaintiff was asked to accept in order to remain employed with Defendant, which also included becoming ineligible for a merit increase and becoming ineligible for any transfers for the period of 12 months. It was not a simple matter of Plaintiff agreeing to not be insubordinate, but rather Plaintiff agreeing to a change in his position, which would result in a probable loss in pay, and prohibition of any promotion to another position at UT for twelve months. Asking for additional time to consider accepting a demotion in his position was not insubordination by Plaintiff.

## VI.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION: TILE VII RACE and NATIONAL ORIGIN**

**DISCRIMINATION FOR DISPARATE TREATMENT**

56.    Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual because of that individual's race."  See 42 U.S.C. § 2000e-2.

57.    Pursuant to 42 U.S.C. § 2000e-2 Plaintiff pleads a cause of action against the Defendant for race and national origin discrimination.

58.    The allegations contained in all paragraphs of this complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

59.    Employee exhausted his available administrative remedies by filing his EEOC charge on April 6, 2021, and a second EEOC Charge No. 451-2021-03083 on December 23, 2021. Plaintiff received his right to sue from the EEOC for both charges on September 20, 2022. See Exhibit A, Exhibit B. The claims pursued in this lawsuit are included or related to Plaintiff's claims in his EEOC charge.

60.    Plaintiff is an employee of Arabic national origin of Defendant University of Texas at Austin.

61.    Plaintiff was subjected to racially derogatory treatment and treated differently than other similarly situated non-Arabic-American employees in terms of policy application and discipline.

62.    Individuals who engaged in similar or identical behaviors as Plaintiff were not disciplined and were outside of Plaintiff's protected class.  Individuals who should have been reprimanded instead of Plaintiff were not.

63.     The effect of these practices has been to deprive Plaintiff of equal employment opportunities and ultimately resulted in Plaintiff's termination.

64.     Plaintiff alleges that the Defendant failed to promote him to three positions he applied to due to his national origin and race during his employment with Defendant. The applications were the following: 1) application to Supervisor of the Building Optimization Team on December 9, 2020, 2) application to the position of Mechanical Project Manager on April 5, 2021, 3) application to the position of Instrumentation and Control Technician II position on July 2021. As demonstrated in the fact section above, Plaintiff was qualified for the position, yet the roles were given to less qualified non-Arabic candidates.

65.     Defendant discriminated against and unfairly disciplined Plaintiff compared to his non-Arabic coworkers. For example, despite making complaints against Mr. Kobza for years about his obscene language and statements about Plaintiff being a terrorist that continued for years. Mr. Kobza was never demoted, prohibited from transferring to any position, become ineligible for merit pay, or terminated for his position.  The only discipline Mr. Kobza allegedly was given by Defendant was to be recommended to attend diversity training. However, when Plaintiff, while severely sick, called the medical helpline at UT for results, his alleged raised voice was sufficient grounds for Defendant to terminate him within a month's time.

66.     Finally, Defendant's wrongful termination is an adverse employment action that materially and adversely changes Plaintiff's overall terms and conditions of his employment in violation of Title VII of the Civil Rights Act of 1964.

67.     Defendant's wrongful termination of Plaintiff is a direct and proximate result of national origin and race discrimination and his protected activities.

68.     As a result of Defendant's unlawful termination, Plaintiff has suffered and continued to suffer harm, including but not limited to lost earnings, lost benefits, and other severe financial losses, as well as emotional and mental anguish.

69.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, and other appropriate relief. Attorney's fees should be awarded pursuant to 42 U.S.C. 2000e-5(k).

## SECOND CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT CLAIM DUE RACE AND NATIONAL ORIGIN UNDER TITLE VII

70.     Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge an individual, or otherwise discriminate against any individual because of that individual's race."  See 42 U.S.C. § 2000e-2.

71.     Pursuant to 42 U.S.C. § 2000e-2 Plaintiff pleads a cause of action against the Defendant for race and national origin discrimination.

72.     The allegations contained in all paragraphs of this complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

73.     Employee exhausted his available administrative remedies by filing his EEOC charge on April 6, 2021, and a second EEOC Charge No. 451-2021-03083 on December 23, 2021. Plaintiff received his right to sue from the EEOC for both charges on September 20, 2022. See Exhibit A, Exhibit B. The claims pursued in this lawsuit are included or related to Plaintiff's claims in his EEOC charge.

74.     Plaintiff is an employee of Arabic national origin of Defendant University of Texas at Austin.

75.     Plaintiff was subjected to racially derogatory treatment and a hostile work environment claim under Title VII and suffered from unwelcome harassment based on his members hip in a protected class.

76.     As stated in the fact section above, starting in May 2020, Plaintiff was insulted and told he had language comprehension barriers by Mr. Kobza and Ms. Manning. On September 7, 2020, Mr. Kobza called Plaintiff a "fucking Arab." Plaintiff made a complaint about this incident to Defendant's investigation department on March 19, 2021. On or about October 2020, Plaintiff was with his coworker, Mr. Armando Ortiz, working in the mechanical room at Belmont Building when Mr. Kobza entered the room eating pistachios.

77.     Throughout the following months, Plaintiff continued to be subjected to incidents of harassment and islamophobia on a daily basis by the employees in his department and other personnel at the university. Then on February 26, 2021, Mr. Kobza told Plaintiff "I looked you up on google and found out that you are a terrorist and you blow up a childcare building back there[referring to Iraq]." Mr. Kobza made this statement in front of two coworkers of Plaintiff. One of the coworkers was Mr. Michael Brown (hereinafter "Mr. Brown").

78.     Defendant had knowledge regarding Mr. Kobza's discriminatory comments to Plaintiff through Plaintiff's written complaint to Mr. Eaves on July 3, 2020. Additionally, Mr. Eaves was informed of the hostile work environment through Mr. Michael Brown's complaint, which stated, "THIS IS NOT AN ISOLATED INCIDENT. It is brushed off, laughed off, nearly EVERY DAY."

79.     Plaintiff was also treated in a demeaning manner and given less benefits and assistance compared to his non-Arabic coworkers like not being assigned a company vehicle.

Plaintiff complained about Mr. Eaves's discriminatory treatment, notifying Defendant during his employment, but nothing was addressed.

80.    Plaintiff was also ostracized and belittled by UT Personnel like Michael Rodriguez and Bradely Rogers. Michael Rodriguez refused to allow Plaintiff to fulfill work orders in his building but made no restrictions against the other Instrumentation and Control Technician I in Plaintiff's department. Similarly, Mr. Bradley Rogers refused to fulfill work orders for Plaintiff for the building he oversaw.

81.    After Plaintiff complained of Mr. Rodriguez's harassment and discrimination, Mr. Eaves tried to transfer Plaintiff to an even more hostile work environment with a supervisor had had a pattern of discriminating against employees based on national origin and race.

82.    As demonstrated in the fact section above, the harassment against Plaintiff was daily therefore it was sufficiently pervasive to reach the level of a hostile work environment. Furthermore, the harassment from Defendant employees interfered with Plaintiff's performance, and Defendant was made aware of it through Plaintiff's multiple complaints listed in the fact section above.

**THIRD CAUSE OF ACTION: RETALIATION UNDER TITLE VII**

83.    Plaintiff realleges and incorporates all the allegations contained in the preceding paragraphs of this Petition as though fully rewritten herein.

84.    Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  See 42 U.S.C. § 2000e-3.

85.    49.    Pursuant to 42 U.S.C. § 2000e-3 Plaintiff pleads a cause of action against the Defendant for retaliation.

86.    Plaintiff has exhausted the federal administrative remedies in this cause by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding the Defendant's alleged discriminatory conduct. The EEOC issued a Notice of Right to Sue letter, which Plaintiff received on September 20, 2022. See Exhibit A, B.

87.    Plaintiff engaged in the following protected activities; 1) July 3, 2020 Plaintiff reported Kobza and Ms. Manning's offensive comment regarding language discrimination to his supervisor, 2) on or around September 2, 2020 Plaintiff reported incidents regarding Micheal Rodriguez harassment, 3) February 26, 2021, Plaintiff reported second incident of Randall Kobza calling Plaintiff a terrorist, 4) March 8,2021 Plaintiff made a complaint to HR about supervisor's retaliation, 5) March 19, 2021 Plaintiff made a complaint investigative department about the "fucking Arab" insult, 6) March 26, 2021 Plaintiff made a complaint to HR about supervisor's retaliation not approving his timesheet work hours, 7) March 31, 2021 plaintiff asked HR to provide a result regarding his supervisor investigation, 8) April 1, 2021, Plaintiff asked Defendant to provide the result of the investigation about his complaints of Michael Rodriguez retaliation 9) On April 6, 2021, Plaintiff filed an EEOC Charge for discrimination 10) On April 9, 2021 Plaintiff complained about additional harassment and offensive behaviors from Randall Kobza, 11) On May 25, 2021 Plaintiff reported hate and harassment of his work environment to his supervisor when his desk was dumped with trash, 12) June 4, 2021, Plaintiff  made a complaint to HR regarding his supervisor's retaliation of applying a new policy for Plaintiff that was not applied to his non-Arabic coworkers, 13) June 10, 2021 Plaintiff resubmitted a complaint about supervisor's retaliation to Human Resources, 14) July 21,2021 Plaintiff made a complaint to HR regarding

discrimination in the hiring process, 15)July 28, 2021, Plaintiff made another complaint to Human Resources about the hostile work environment getting worse from Mr. Kobza, 16) on or about September 1, 2021, Plaintiff sent an email to university employees, the president, Human Resources, inclusion office, and the investigation department about the discrimination at the university Plaintiff was facing and the concerns that other employees were experiencing the same issues, 17) on or about September 3, 2021, Plaintiff made a complaint to Ms. Deobrah Sharp about the investigations, 18) On or around September 7, 2021, Plaintiff complained to Ms. Lantiegne at the DIA about his previous complaints and the manner they were being investigated, 19) on September 7, 2021, Plaintiff emailed the University of Texas President, Mr. Jay Hartzell regarding the neglect and discriminatory manner Plaintiff's complaints were being handled by Defendant, on September 13, 2021, Plaintiff refused to obey the discriminatory order of his supervisor requiring Plaintiff to admit to committing actions that did not occur. In conclusion, Plaintiff has met the first element of having engaged in a protected activity.

88.     Due to Plaintiff's protected complaints, Defendant committed the following acts of retaliation: 1) Mr. Eaves pressured Plaintiff to accept a transfer to Zone where Plaintiff would be subjected to a more hostile work environment, 2) failed to promote Plaintiff to the position of Supervisor of the Building Optimization Team which Plaintiff applied to on on December 9, 2020, 3) failed to promote Plaintiff to the Project manager position which Plaintiff applied to on April 5, 2021, 4) failed to promote Plaintiff to Implementation and Control Technician II position which Plaintiff applied to on July 2021, and 5) Mr. Eaves began a pattern of failing to approve Plaintiff's time sheets and work orders following Plaintiff's complaints against Mr. Eaves and other Defendant employees, 6) retaliated against Plaintiff by not approving his work orders.

89.    Additionally, following Plaintiff's EEOC complaint in April 2021, and subsequent complaints to Human Resources, Plaintiff received further retaliation from his supervisor, Mr. Eaves. After Plaintiff's complaint against Mr. Eaves, Mr. Eaves started requiring Plaintiff to only complete his paperwork in the same building that the work had taken place. This rule was not required of Plaintiff's coworkers in Zone three that reported to Mr. Eaves. Additionally, Mr. Eaves began interrogating Plaintiff about the specific order Plaintiff chose to complete his work orders. Mr. Eaves did not harass Plaintiff about this matter prior to Plaintiff making his EEOC Charge and complaints of discrimination and retaliation against Mr. Eaves.  Then on June 4, 2021, Mr. Eaves began requiring Plaintiff to request a work order before Plaintiff was allowed to start work on anything. This was not a policy in place in Zone three prior to Plaintiff's EEOC charge. Mr. Eaves did not require Plaintiff's white/non-Arab coworkers to complete work orders prior to starting their work.[8] Additionally, on or around September 8, 2021, Mr. Eaves began instructing other employees to not provide work orders for Plaintiff, like Mr. Bradley Rogers.

90.    Lastly, following Plaintiff's complaints to Defendant in September, an additional act of retaliation against Plaintiff occurred when he was given the "Decision Day Letter" on September 9, 2021 by Mr. Eaves.  In the letter, Plaintiff was directed to accept a demotion in his position where he would be ineligible for transfer for a twelve months period and ineligible for a merit increase for a twelve month period. This letter made false allegations against Plaintiff in an attempt to justify the retaliatory action. Furthermore, it required Plaintiff to accept the negative terms within 24 hours to remain employed. Plaintiff responded with a letter disputing the false allegations on September 13, 2021.

---

[8] Exhibit B - Doc 1-1, pg. 28- 29.

91.     Lastly, Defendant retaliated against Plaintiff by terminating his employment on September 17, 2021 due to his complaints of discrimination and retaliation Plaintiff made to Defendant that are listed above.  Defendant's adverse actions against Plaintiff are a direct and proximate result of national origin and race discrimination and his protected activities.

92.     As a result of Defendant's adverse actions listed above, Plaintiff has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other severe financial losses, as well as emotional and mental anguish.

93.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII, including back pay, front pay, compensatory damages, and other appropriate relief. Attorney's fees should be awarded pursuant to 42 U.S.C. 2000e-5(k).

## VII.    DAMAGES

94.     Plaintiff sustained damages as a result of the actions and/or omissions of Defendant as described herein.  Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court.  Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

95.     Additionally, as a result of Defendant's above-referenced actions and/or omissions, Plaintiff was required to retain counsel to protect and enforce his legal rights.  Accordingly, Plaintiff also seeks compensation for the attorney's fees, as well as out-of-pocket expenses, expert fees and costs of Court he will have incurred in this action.

## VIII.    <u>JURY DEMAND</u>

96.    Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## IX.    <u>PRAYER</u>

For the reasons set forth above, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for:

a.  All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to back pay, reinstatement, upgrading, and compensation for benefits not received;

b.  Lost wages in the future;

c.  Past physical pain and mental suffering;

d.  Present physical pain and mental suffering;

e.  Future physical pain and mental suffering;

f.  Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

g.  Prejudgment interest at the highest rate permitted by law;

h.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

i.  Costs of Court; and

j.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

k.  Rehire with promoted position

Respectfully submitted,

TB Robinson Law Group, PLLC

_____
Terrence B. Robinson
Fed. Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Claudia Casas
Fed Bar No. 3573914
Texas Bar No.24110850
Email: CCasas@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April 2024, the foregoing *Plaintiff's Third Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF system and served on all attorney(s) and/or parties of record via CM/ECF service.

_____
Terrence B. Robinson